Michael D. Mortenson, State Bar No. 247758
  mmortenson@mortensontaggart.com
Craig A. Taggart, State Bar No. 239168
  ctaggart@mortensontaggart.com
Robert A. Schultz, State Bar No. 305367
  rschultz@mortensontaggart.com
MORTENSON TAGGART LLP
300 Spectrum Center Dr., Suite 1100
Irvine, CA 92618
Telephone: (949) 774-2224
Facsimile: (949) 774-2545

Attorneys for Plaintiffs
CALIFORNIA CRAFT BREWERS
ASSOCIATION; TOPA TOPA BREWING
COMPANY, LLC; GREEN CHEEK BEER
COMPANY, LLC; SECOND CHANCE
BEER COMPANY, LLC; CHAPMAN CBC,
LLC dba CHAPMAN CRAFTED BEER;
BIKE DOG BREWING COMPANY, LLC;
& 1150 HOWARD PARTNERS, LP dba
CELLARMAKER BREWING COMPANY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CRAFT BREWERS ASSOCIATION, a California nonprofit mutual benefit corporation; TOPA TOPA BREWING COMPANY, LLC, a California limited liability company; GREEN CHEEK BEER COMPANY, LLC, a California limited liability company, SECOND CHANCE BEER COMPANY, LLC, a California limited liability company, CHAPMAN CBC, LLC, California limited liability company, dba CHAPMAN CRAFTED BEER, BIKE DOG BREWING COMPANY, LLC, a California limited liability company, and 1150 HOWARD PARTNERS, LP, a California limited partnership, dba CELLARMAKER BREWING COMPANY, | CASE NO. <br><br> *Hon.* <br><br><br> **COMPLAINT FOR:** <br><br> 1. **VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION** <br><br> 2. **VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION** |
| Plaintiffs, | |

COMPLAINT

1

vs.

2

GAVIN NEWSOM, in his official
capacity as Governor of California;
SANDRA SHEWRY, in her official
capacity as California State Public
Health Officer; and DOES 1 through
10, inclusive,

3

4

**DEMAND FOR JURY TRIAL**

5

6

Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs California Craft Brewers Association ("CCBA"); Topa Topa Brewing Company ("Topa Topa"); Green Cheek Beer Company, LLC ("Green Cheek"), Second Chance Beer Company, LLC ("Second Chance"), Chapman CBC, LLC dba Chapman Crafted Beer ("Chapman Crafted Beer"), Bike Dog Brewing Company, LLC ("Bike Dog"), and 1150 Howard Partners, LP dba Cellarmaker Brewing Company ("Cellarmaker") (collectively, "California Craft Brewers") bring this complaint against Defendants Governor Gavin Newsom ("Newsom") and Sandra Shewry (collectively, "Defendants") as follows:

## INTRODUCTION

1.     The worldwide beer industry has reached extraordinary heights in the last decade.  California breweries were a catalyst for this exponential growth, particularly craft breweries, and California remains one of the most revered and lauded locations for beer in the world.  In fact, in the 2012 biennial World Beer Cup Competition, California craft brewers won an astounding fifty-five medals, which was more than any other state or country.  Most recently, in the 2020 Great American Beer Festival, California craft brewers again won the most medals with sixty-three.

2.     California beer manufacturers have also been, and remain, a model citizen of California.  As of 2019, California's craft beer industry supported 61,335 jobs, paying nearly $3.5 billion to its workers.  In 2018, California beer manufacturers paid $906.1 million in state and local taxes.

3.     California Craft Brewers recognize and support health and safety measures designed to protect California's citizens during the current global pandemic.  However, the measures implemented by California to effectuate that goal are invalid and unfair, and they are decimating California's breweries, along with the small business owners and employees that depend upon them.

///

///

4.     California cannot infringe upon the rights guaranteed to California's citizens by the United States Constitution.  As one United States District Court explained: "[T]he solution to a national crisis can never be permitted to supersede the commitment to individual liberty that stands as the foundation of the American experiment."  *Cnty of Butler v. Wolf*, No. 2:20-cv-677, (W.D.P.A. September 14, 2020).

5.     Litigants across the country have challenged government action implemented to combat the novel coronavirus ("COVID-19") on the ground that such actions violate certain constitutional rights.  Some have succeeded, others have not.  Plaintiffs in this case, an association and six beer manufacturers with tasting rooms, are better positioned than any other COVID-19 litigant, even the successful ones.

6.     In response to the COVID-19 pandemic, and with the stated goal of slowing the spread of the virus, Defendant Newsom issued a series of executive orders that, among other things, prohibited beer manufacturers from operating tasting rooms unless they contemporaneously provide sit-down, dine-in meals, whether or not such businesses were previously licensed or equipped to provide such meals.  California's mandate was not supported by scientific data, or an explanation of how the provision of meals achieves the goal of slowing the spread of the virus.

7.     Only beer tasting rooms are required to serve meals; wine tasting rooms are not. Even wineries that share a tasting room with beer manufacturers may continue to sell and serve wine to customers without food, while the beer manufacturer is prohibited from selling beer to the same customers in the same tasting room unless it also sells food.  To date, Defendants have not presented any valid basis for treating beer manufacturers different than wineries.  COVID-19 does not impact a winery differently than it impacts a beer manufacturer.

///

8. Beer manufacturers and wineries are regulated by California's Department of Alcoholic Beverage Control ("ABC") and by the various Business and Professions Code statutes enacted by California's legislature. Neither the ABC regulations, nor California's Business and Professions Code, require beer manufacturers or wineries to serve a meal in order to operate their tasting room.

9. Requiring beer manufacturers to serve food as a perquisite to operating their tasting room is arbitrary, irrational and unconstitutional. There are no facts evidencing a rational relationship between the meal requirement and the prevention of COVID-19, and Defendants have presented none.

10. Requiring beer manufacturers to serve food as a perquisite to operating their tasting room, but exempting similarly situated wineries, and in some cases identically situated wineries, from the meal requirement, is similarly arbitrary, irrational and unconstitutional.

11. Plaintiffs also have no ability to challenge or appeal Defendants' executive orders, in violation of their constitutional rights to procedural due process.

12. Plaintiffs have suffered, and continue to suffer, substantial and irreparable harm. Businesses are closing, jobs are lost, and livelihoods are being destroyed.

13. Defendants' executive orders and related state action requiring beer manufacturers to provide meals to operate a tasting room violate the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs respectfully bring the instant action for an order from this Court declaring the executive orders requiring California's beer manufacturers to provide meals in order to operate a tasting room as unconstitutional.

///

MORTENSUN
TAGGART LLP

**THE PARTIES**

14.   Plaintiff CCBA is a California nonprofit mutual benefit corporation that represents the craft and specialty brewing industry in California.  CCBA is, and at all relevant times was, a California corporation authorized to do and doing business in California.  CCBA maintains its principal place of business in Sacramento, California.  CCBA has standing to pursue these claims due to the direct harm it has suffered as a result of Defendants' conduct, as well as in a representative capacity on behalf of its members who have suffered and continue to suffer immediate injury as a result of Defendants' conduct.

15.   Plaintiff Topa Topa is an award-winning beer manufacturer who operates tasting rooms.  Topa Topa is, and at all relevant times was, a California limited liability company authorized to do and doing business in California.  Topa Topa maintains its principal place of business in Ventura, California.

16.   Plaintiff the Green Cheek is an award-winning beer manufacturer who operate tasting rooms.  Green Cheek is, and at all relevant times was, a California limited liability company authorized to do and doing business in California.  Green Cheek maintains its principal place of business in Orange, California.

17.   Plaintiff Second Chance is an award-winning beer manufacturer who operates two tasting rooms in San Diego, California.  Second Chance is, and at all relevant times was, a California limited liability company authorized to do and doing business in California.  Second Chance maintains its principal place of business in San Diego, California.

18.   Plaintiff Chapman Crafted Beer is an award-winning beer manufacturer who operates a tasting room.  Chapman Crafted Beer is, and at all relevant times was, a California limited liability company authorized to do and doing business in California.  Chapman Crafted Beer maintains its principal place of business in Orange, California.

MORTENSON
TAGGART LLP

-6-
COMPLAINT

19.   Plaintiff Bike Dog is an award-winning beer manufacturer who operates tasting rooms.  Bike Dog is, and at all relevant times was, a California limited liability company authorized to do and doing business in California. Bike Dog maintains its principal place of business in Sacramento, California.

20.   Plaintiff Cellarmaker is an award-winning beer manufacturer who operates tasting rooms.  Cellarmaker is, and at all relevant times was, a California limited partnership authorized to do and doing business in California. Cellarmaker maintains its principal place of business in San Francisco, California.

21.   Defendant Newsom is named as a defendant in this action in his official capacity as the Governor of California.  As the Governor of California, Newsom is entrusted to "see that the law is faithfully executed."  Cal. Const. Art. V, §1.

22.   Defendant Sandra Shewry is named as a defendant in this action in her official capacity as State Public Health Officer and Interim Director of the California Department of Public Health (the "CDPH").  As of the filing of this complaint, Governor Newsom has appointed Thomas Aragon as California's new Public Health Officer and Director of the CDPH.  This Complaint will be amended to name Mr. Aragon as a defendant if he is confirmed by the California Senate for this position.

23.   Each Defendant acted under color of state law with respect to all acts or omissions alleged here.

24.   Plaintiffs currently do not know the true names and capacities of the defendants sued as DOES 1 through 10, inclusive, and therefore sues these defendants by fictitious names.  Plaintiffs will amend the Complaint to add the true names and capacities of these defendants when they are ascertained.  Each of the fictitiously named Doe defendants is responsible in some manner for the events and happenings alleged in this Complaint and for Plaintiffs' damages.

MORTENSON
TAGGART LLP

25.    Each Defendant at all times mentioned in this Complaint was an agent, principal, master, servant, employee, employer, partner, co-conspirator, alter-ego and/or joint venture of each of the other defendants, and in doing the things, acts and omissions alleged in this Complaint was acting within the course and scope of that agency, alter-ego, employment or representation and/or in furtherance of the joint venture, with the knowledge, consent, ratification and approval of each of the other defendants.  Any allegation referring to a single defendant refers to all such defendants, jointly and severally.

## JURISDICTION AND VENUE

26.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution, specifically the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment.  This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4), which designate district courts as having original jurisdiction over actions "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States" as well as actions "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights . . . ."

27.    Venue is appropriate in the Central District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the district in which Defendants maintain offices, exercise their authority in their official capacities, and enforce their orders (including those at issue in this litigation), and because it is the district in which a substantial part of the events giving rise to this action occurred.

///

MORTENSON
TAGGART LLP

-8-
COMPLAINT

28.   There is a present and actual controversy between the parties.

29.   The relief requested by Plaintiffs is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 (declaratory judgment), 28 U.S.C. § 1651(a) (injunctive relief), 42 U.S.C. § 1983, and 42 U.S.C. § 1988 (right to costs, including attorneys' fees).

## GENERAL ALLEGATIONS

### California's Critical Craft Beer Industry

30.   As of October 2019, just before the COVID-19 pandemic, there were more than 1,039 craft breweries in California, more than in any other state in the nation.  California breweries operate not only in major areas such as San Diego, Los Angeles, and San Francisco, but also in significant numbers in smaller regions across the state such as Orange County, the Inland Empire, the Central Coast, Sacramento County, Butte County, and Shasta County.  There are beer manufacturers spread across the entire state, from Weed, California to San Diego, California.  Only five percent of California residents live over ten miles away from a brewery.

31.   Plaintiffs Topa Topa, Green Cheek, Second Chance, Chapman Crafted Beer, Bike Dog, and Cellarmaker, as well as the vast majority of Plaintiff CCBA's other members, operate tasting rooms.  These tastings rooms are essential to their economic viability, especially for beer manufacturers without any substantial retail distribution channel, which is often the case for many small and local businesses in this industry.  In other words, beer manufacturers rely heavily upon on-site sales, where customers visit their facility and try various products before purchasing larger quantities.

32.   Additionally, prior to the COVID-19 pandemic, Plaintiffs Topa Topa, Green Cheek, Second Chance, Chapman Crafted Beer, Bike Dog, and Cellarmaker as well as the vast majority of Plaintiff CCBA's other members, did not operate kitchens.  Operating a kitchen is expensive and would require new

COMPLAINT

MORTENSON
TAGGART LLP

conditional use permitting and compliance with a host of additional rules and regulations that would completely transform the business model of beer manufacturers who, at their core, are manufacturers of alcoholic beverage products just like wine manufacturers.  Again, the ABC Act, the primary source for statutes and regulations governing the operations of beer and wine manufacturers, does not require these businesses to operate a kitchen or serve food in order to serve their alcoholic beverages to customers at their tasting rooms.  In certain scenarios, installing and operating a kitchen may be impossible for beer manufacturers and wineries due to local requirements that would apply to such facilities and operations.  This issue was similarly raised by Caymus Wineries in their recent litigation against the state, *i.e.*, that wineries in Napa county were not permitted to serve food due to local regulations.

33.    Indeed, the regulatory environment facing beer and wine manufacturers is so similar that it has led to joint tasting room locations across the state, including Plaintiff Topa Topa and Fox Wines in Santa Barbara, as well as Deft Brewing and Lost Coast Meadery in San Diego and nearly 100 other similar joint winery and brewery locations across the state.  The distinct similarity of winery and brewery operations is further evidenced by the fact that multiple businesses across the State have been issued licenses to be beer manufacturers and wineries within the same physical premises.

## Defendants' Unconstitutional Discrimination

## Against Beer Manufacturers

34.    In response to COVID-19, Governor Newsom declared a State of Emergency on March 4, 2020.  Shortly thereafter, on March 19, 2020, Governor Newsom issued the first "lockdown order," Executive Order No. N-33-20, which ordered all Californians to stay in their homes.

///

///

MORTENSON
TAGGART LLP

35.   Many businesses were forced to shut down due to Governor Newsom's State of Emergency and lockdown order.  This caused many employees to be furloughed and fired from their chosen professions, including individuals working for beer manufacturers.

36.   On May 4, 2020, Governor Newsom empowered the California Public Health Officer ("PHO") to establish "criteria and procedures" applicable to reopening businesses through Executive Order N-60-20.

37.   On May 12, 2020, the California Department of Public Health ("CDPH") issued the following order: "Brewpubs, breweries, bars, pubs, craft distilleries and wineries should remain closed until those establishments are allowed to resume modified or full operation unless they are offering sit-down, dine-in meals.  Alcohol can only be sold in the same transaction as a meal."

38.   Then, on June 28, 2020 and July 1, 2020, the California Department of Public Health ("CDPH") narrowed this sit-down, dine-in meal requirement to beer manufacturers, eliminating the need for wine manufacturers to comply. The July 1, 2020 closure Guidance ordered "all brewpubs, breweries, bars, and pubs in these counties must close, both indoors and outdoors, unless they are offering sit down, dine-in meals as described under the actions section of the guidance issued on June 28."  There is no reasonably articulated end date for the removal of this requirement.

39.   These Guidance orders shall be referred to herein as the "Challenged CDPH Guidance."

40.   The CDPH did not explain why wine manufacturers were exempted from the sit down, dine-in meal requirement from the Challenged CDPH Guidance that was issued pursuant to Governor Newsom's executive order.  It is public knowledge, however, that Governor Newsom owns multiple wineries.  It is also public knowledge that Caymus Wineries challenged the sit-down, dine-in meal requirement as it applied to wineries, the State settled that lawsuit, and

COMPLAINT

MORTENSON
TAGGART LLP

now wineries are not subject to the requirement.  The terms of the State's
settlement with Caymus Wineries, however, are not public.   A settlement of
such suit between Caymus Wineries and the State does not justify
unconstitutional and disparate treatment of beer manufacturers.

## The State Gives Pretextual and Unjustified
## Explanation For Unequal Treatment

41.    After the Challenged CDPH Guidance was issued, and throughout
the summer of 2020, CCBA engaged CDPH in a discussion about the inequities
of the sit-down, dine-in requirement imposed on beer manufacturers.

42.    Specifically, on September 15, 2020, representatives from CCBA
and CDPH discussed the issue.  CCBA requested that beer manufacturers
receive equal treatment with wine manufacturers.  CCBA also demanded from
CDPH the legal and factual basis underpinning its differential treatment of beer
and wine manufacturers as it relates to the sit-down, dine-in meal requirement in
the Challenged CDPH Guidance.

43.    On November 3, 2020, CDPH responded to CCBA's request for
additional information (the "CDPH Letter").  In this response, CDPH provides
the stated justification for the differential treatment of beer and wine
manufacturers.

44.    In the CDPH letter, CDPH explained that the State had implemented
a 4-tier "Blueprint" for reopening businesses, and that the Blueprint was
developed based upon evaluation of several risk-based criteria.  This risk-based
criteria includes the following: (1) the "[a]bility to accommodate face covering
wearing at all times (e.g. eating and drinking would require removal of face
covering)"; (2) the "[a]bility to physically distance between individuals from
different households"; (3) the "[a]bility to limit the number of people per square
foot"; (4) the [a]bility to limit duration of exposure"; (5) the "[a]bility to limit
amount of mixing of people from differing households and communities"; (6)

COMPLAINT

MORTENSEN
TAGGART LLP

the "[a]bility to limit amount of physical interactions of visitors/patrons"; (7) the [a]bility to optimize ventilation (e.g. indoor vs outdoor, air exchange and filtration)"; and (8) the "[a]bility to limit activities that are known to cause increased spread (e.g. singing, shouting, heavy breathing; loud environs will cause people to raise voice)."

45.   Then, the CDPH described its stated justification for the differential treatment between beer and wine manufacturers:

> In response to your question about why breweries are treated differently than wineries in the sector reopening framework, CDPH determined that mixing between greater numbers of people from differing households was more likely at breweries. Breweries are generally found in all areas of the state (e.g., urban, suburban, and rural communities). As such, breweries are often social hubs and meeting locations for different households in a community. In contrast, wineries are generally located in certain regions of the state (e.g., Napa, Sonoma, Amador, and Paso Robles), are often settings people travel to visit, often have limited seating, and often operate with more limited hours and; consequently, and generally not social hubs or meeting locations for different households in a community. While there are certainly exceptions in both directions, these generalizations guided the distinction in what allowances are made in different tiers.

46.   CDPH's stated justification is not grounded in science, data, or any other reliable source. It is baseless speculation and, as to certain fundamental assumptions, wildly inaccurate. Indeed, there are over 4,000 wine manufacturers located across the State, with hundreds if not thousands located outside of the areas named by the State that are also within the same areas as beer manufacturers.[1]

47.   Highlighting the inequities presented by the Challenged CDPH Guidance are the multiple beer manufacturers that share tasting room space with

---

[1] For further information, including a telling graphic showing the sprawling nature of California's 4,000+ wineries, please visit California Winery Map (americanwineryguide.com).

MORTENSEN
TAGGART LLP

wine manufacturers across the state.  Customers are forced to order food if they want a beer, but may drink a glass of wine by itself.  The circumstances surrounding the events are exactly the same, but Defendants decreed winners and losers in the Challenged CDPH Guidance without any rationale based in legitimate public health considerations.

48.   Moreover, the sit-down, dine-in meal requirement increases, rather than reduces, the public health risk.  It increases the points of contact with which consumers must interact and increases the amount of time that a customer must keep their face covering removed.  By forcing customers to reduce the amount of time that face coverings are being worn – a concern of paramount importance in the State's public messaging and other public health guidelines – the regulation thereby increases the likelihood of the transmission of COVID-19. Additionally, because most beer manufacturers do not have kitchens, they must contract with third-parties and rely on those third-parties to be as careful as they are about maintaining safe practices.

## Beer Manufacturers Have Been
## Substantially and Irreparably Harmed

49.   Plaintiffs, along with CCBA's members, have been irreparably harmed by the State's actions in response to COVID-19, including most significantly by the sit-down, dine-in meal requirement in the Challenged CDPH Guidance.

50.   In May 2020, just a couple months into the pandemic, the National Beer Wholesalers Association estimated that beer manufacturers could lose as much as $8 billion from government orders through June 2020.

51.   Now, as the Challenged CDPH Guidance has been in place for months, the impact on California breweries has been devastating.  For many such businesses, the damage is already irreparable and permanent closure is imminent.  Plaintiffs have incurred substantial damages, including lost revenue

MORTENSON
TAGGART LLP

from tasting room sales, lost revenue from beer sales associated with tasting room operations, and various expenses incurred in attempted compliance with the food requirement.

52.   Certain beer manufacturers have been unable to serve food at all, others have been unable to procure food service for seven days a week or find a reliable third party to deliver upon expressed commitments to provide food during all business hours, and still others struggle to obtain enough food to last all day.  Due to the Challenged CDPH Guidance, all of these circumstances result in losses because the beer manufacturer cannot serve its beer without also serving food.

53.   Plaintiff CCBA has lost fifteen percent of its members as a result of financial hardship or closures related to COVID-19.

54.   Plaintiffs' losses continue to increase each day, and are expected to continue to increase through the holiday season and beyond.

55.   Plaintiffs have also incurred non-monetary damages including reputational damage, customer confusion, and the perils of competing in an environment that is patently unfair.

56.   In short, the Challenged CDPH Guidance has caused, and continues to cause, considerable damage to Plaintiffs and similarly situated beer manufacturers, including injuries to their businesses and reputation, as well as injuries to their relationships with customers, employees, and vendors.

**California Beer Manufacturers Are Well Positioned**
**To Operate Safely Once The Sit-Down, Dine-In**
**Meal Requirement Is Stricken**

57.   Once the sit-down, dine-in meal requirement is stricken, Plaintiffs, and CCBA's members, are happy to operate in a manner that will comply with all remaining applicable local, state and federal safety guidance, including guidance from the CDPH, Centers for Disease Control and Prevention ("CDC"),

MORTENSON
TAGGART LLP

Occupational Safety and Health Administration ("OSHA"), and the U.S. Food and Drug Administration ("FDA").

58.   In fact, Plaintiffs and beer manufacturers across the state have already implemented robust protocols directed at protecting customer safety that go above-and-beyond recommended guidelines.  This includes limiting table size to six people, requiring customers to wear facemasks during the times when a customer must leave their table for any reason, requiring employees to wear facemasks at all times, spacing tables six feet (or more) away from one another, requiring employees to wash their hands regularly, requiring employees to wear gloves, requiring temperature checks, requiring tables and other surfaces to be sanitized at regular intervals.  Many beer manufacturers have also implemented additional policies to prevent mingling amongst customers, including replacing traditional bar service with table service and even physically separating guest areas.  Finally, many beer manufacturers have expanded their outside service areas or created entirely new ones.

59.   Beer manufacturers are uniquely well-positioned to operate pursuant to strict cleanliness standards.  Good beer is not possible without pristine cleanliness and sanitation.  Beer manufacturers can, and have, implemented cleanliness and sanitation principles utilized in their back-of-house operations to their front-of-house, consumer-facing operations.  Indeed, Plaintiffs receive high praise from their customers for the seriousness with which they treat COVID-19 and the lengths to which they go to protect their customers.

60.   Plaintiffs are entitled to be treated equally to other similarity-situated businesses, namely wine manufacturers.  There is no basis, rational or otherwise, for the distinction Defendants have drawn in imposing the sit-down, dine-in requirement on beer manufacturers and not wine manufacturers, and Plaintiffs have been denied due process of law.

///

MORTENSUN
TAGGART LLP

-16-
COMPLAINT

# FIRST CAUSE OF ACTION

## [Violation of the Equal Protection Clause

## of the Fourteenth Amendment of the United States Constitution]

## (Against All Defendants)

61.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

62.   The Equal Protection Clause of the 14th Amendment to the United States Constitution forbids any state to "deny to any person within its jurisdiction equal protection of the laws."  U.S. Const. Amend. XIV.  The Equal Protection Clause requires government action to treat similarly situated people and businesses similarly, and prohibits government action from making arbitrary distinctions that are insufficiently justified.

63.   Beer manufacturers and wine manufacturers are substantially similar businesses, with essentially identical public health risk profiles.  Both manufacture an alcoholic beverage, and the primary difference between the two is the beverage they manufacture.  Wine manufacturers may actually present a more heightened public health risk than beer manufacturers because most wine has a higher alcohol by volume content than most beer.

64.   Despite the similarities between beer and wine manufacturers, Defendants have treated beer manufacturers differently from wine manufacturers with respect to the sit-down, dine-in meal requirement that is currently imposed only on beer manufacturers, not wine manufacturers, pursuant to the Challenged CDPH Guidance.

65.   Defendants' differential treatment of beer manufacturers and wine manufacturers has no rational basis, is arbitrary, and relies on factual assumptions that exceed the bounds of rational speculation both in its origin and in its application.  Moreover, this differential treatment has no real or substantial relation to public health.  In fact, the sit-down, dine-in meal requirement

MORTENSON
TAGGART LLP

imposed on beer manufacturers does not protect public health by limiting customers' personal interactions, and in fact does the opposite by increasing customers' personal interactions and the surfaces with which they must come in contact, while increasing the amount of time guests are unable to wear face coverings.  Moreover, imposing the sit-down, dine-in meal requirement on beer manufacturers does not keep California citizens who seek an alcoholic beverage at home entirely, it just sends them to a winery instead – which is likely to be very nearby (even next door) to the beer manufacturer they would have otherwise visited.

66.   Plaintiffs have no adequate remedy at law.  They have suffered, and will continue to suffer, serious and irreparable harm unless Defendants are enjoined from implementing and enforcing the Challenged CDPH Guidance.

67.   Plaintiffs respectfully seek a declaration that the Challenged CDPH Guidance violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

68.   Plaintiffs are entitled to attorney's fees pursuant to 42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**

**[Violation of the Due Process Clause**

**of the Fourteenth Amendment of the United States Constitution]**

**(Against All Defendants)**

69.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

70.   The Due Process Clause of the 14th Amendment to the United States Constitution forbids states from taking action to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The touchstone of due process is protection of the individual against the arbitrary action of the government." *Wolff v. McDonnell*, 4188 U.S. 539, 558

MORTENSON
TAGGART LLP

COMPLAINT

(1974). The Supreme Court has held that the Due Process Clause was intended to prevent government officials "from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 502 U.S. 115, 126 (1992)). Moreover, the Due Process Clause requires a meaningful procedure for challenging government action. *Logan v. Zimmerman Brush Co.*, 102 S. Ct. 1148, 1155 (1982).

71.    Plaintiffs have fundamental liberty and property interests, protected by the Due Process Clause, in conducting their lawful businesses.

72.    The Challenged CDPH Guidance violates the substantive and procedural components of the Due Process Clause.

73.    The Challenged CDPH Guidance is arbitrary and invites arbitrary enforcement.  Moreover, it strips Plaintiffs of their right to engage in the occupation of their choosing free from unreasonable government interference. The Challenged CDPH Guidance was also implemented without affording Plaintiffs a constitutionally-adequate hearing, and does not provide Plaintiffs (or other California beer manufacturers) with a meaningful procedure for challenging the government action at issue that has, and continues to, deprive them of liberty and property.

74.    As a direct and proximate cause of Defendants actions described herein, Plaintiffs have been harmed, including by being deprived of their liberty and property rights without either substantive or procedural due process of law in violation of the Due Process Clause.

75.    Plaintiffs have no adequate remedy at law.  They have suffered, and will continue to suffer, serious and irreparable harm unless Defendants are enjoined from implementing and enforcing the Challenged CDPH Guidance.

///

///

76.   Plaintiffs respectfully seek a declaration that the Challenged CDPH Guidance violates the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

77.   Plaintiffs are entitled to attorney's fees pursuant to 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests judgment as follows:

1.   For a declaration that the Challenged CDPH Guidance violates Plaintiffs' rights guaranteed by the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution.

2.   For an order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from requiring beer manufacturers in California to serve a sit-down, dine-in meal in order to serve their beer to customers or otherwise operate a tasting room.

3.   For reasonable attorney's fees and costs incurred by Plaintiffs in prosecuting this action pursuant to law, including 42 U.S.C. §1988; and

4.   For such other and further relief as this Court may deem just and proper.

DATED:  December 17, 2020        MORTENSON TAGGART LLP


By:  */s/ Craig A. Taggart*
      Michael D. Mortenson
      Craig A. Taggart
      Robert A. Schultz
      Attorneys for Plaintiffs

1

## **DEMAND FOR JURY TRIAL**

2
     Plaintiffs hereby demand trial by jury.

3

4
DATED:  December 17, 2020        MORTENSON TAGGART LLP

5

6
                             By:  */s/ Craig A. Taggart*

7
                                   Michael D. Mortenson
                                   Craig A. Taggart

8
                                   Robert A. Schultz
                                   Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORTENSUN
TAGGART LLP

-21-
COMPLAINT